# Marsh, Appellant, *v.* Platt.

*Wills—Devise—Life estate—Estate in fee simple—Rule in Shelley's case.*

Testator devised as follows: "My executors will hold the real estate which I own, as follows: My son shall have the use and income therefrom during his life and shall pay two hundred dollars a year rent therefor as long as my wife lives, which rent shall go through my executor to my said wife as part of the said four hundred dollars per year hereinbefore directed to be paid to her.   After my wife's death he shall pay no more rent therefor, but shall pay all taxes and assessments against said land

and upon his death said land shall descend to and the title thereto shall at once vest in his heirs at law. If my executors at any time after my wife's death can get twelve thousand dollars or more for said land and consider it advisable to sell said real estate they may do so provided my son consents to, and the proceeds shall be carefully invested on bond and mortgage and held and used as directed concerning the land itself." *Held*, that the son took an estate in fee under the rule in Shelley's case, inasmuch as the executor was a mere holder of the title on a dry trust.

Argued April 20, 1908. Appeal, No. 171, Jan. T., 1908, by plaintiff, from judgment of C. P. Clearfield Co., Sept. T., 1905, No. 144, for defendant on case tried by court without a jury in suit of Zach Marsh v. John Platt et al. Before Mitchell, C. J., Fell, Brown, Potter and Stewart, JJ. Affirmed.

Ejectment for land in Brady township. Before Smith, P. J.

The case was tried by the court without a jury under the act of April 22, 1874.

The plaintiff was a son of William W. Marsh, who was a son of William Marsh, who in turn was a son of Zacheus Marsh. Plaintiff claimed to recover an undivided two-fifths of the land in dispute as one of the sons of the second William Marsh. The material portions of the will of Zacheus Marsh are quoted in the opinion of the Supreme Court. The defendant claimed under a deed from William Marsh the first. The court decided that William Marsh took a fee by virtue of the rule in Shelley's case, and entered judgment for defendant.

*Error assigned* was in entering judgment for defendant.

*A. L. Cole*, for appellant, cited : Dodson v. Ball, 60 Pa. 492; Watson's App., 125 Pa. 340 ; Sheets's Est., 52 Pa. 257.

*Thos. H. Murray*, with him *Pentz & Calkins, Jas. P. O'Laughlin* and *Hazard Alex Murray*, for appellees, cited : Physick's App., 50 Pa. 128 ; Dodson v. Ball, 60 Pa. 492 ; Ogden's App., 70 Pa. 501 ; Carson v. Fuhs, 131 Pa. 256 ; McCullough v. Coal Co., 210 Pa. 222 ; Shapley v. Diehl, 203 Pa. 566.

Per Curiam, May 18, 1908 :

The testator devised : " Fourth. My executors will hold the

real estate which I own in Clearfield County, Pa., as follows: My son William shall have the use and income therefrom during his life and shall pay Two Hundred dollars a year, rent therefor as long as my wife lives, which rent shall go through my executor to my said wife as part of the said Four Hundred dollars per year hereinbefore directed to be paid to her. After my wife's death he shall pay no more rent therefor, but shall pay all taxes and assessments against said land and upon his death said land shall descend to and the title thereto shall at once vest in his heirs at law. If my executors at any time after my wife's death can get Twelve Thousand dollars or more for said land and consider it advisable to sell said real estate they may do so provided my son William W. consents to, and the proceeds shall be carefully invested on bond and mortgage and held and used as directed concerning the land itself."

The gift, prima facie, was of a life estate to the son, with provision that upon his death the land "shall descend to, and the title thereto shall at once vest in his heirs at law." This is within the express language of the rule in Shelley's case, and the only question that can arise is whether the conditions and the trust take the devise out of the rule.

The son took under the will all the substantial rights and powers of ownership during his life. He was to have the use and income of the land, was to pay all taxes and assessments upon it, had a veto on the sale of it during his life, and if sold with his consent the proceeds were to be held for him under the same terms as the land itself. The only active duty of the trustees in connection with the land was to receive from him the annual rent of $200 charged on the land for the benefit of testator's widow. But this duty was imposed in regard to the widow to whom, in paragraph three, testator directed $400 a year to be paid, of which $200 was to come from this life tenant, "to go through my executor to my said wife." It had nothing to do with the life estate except to collect the widow's rent charged upon it.

It is manifest that the executor was a mere holder of the title on a dry trust: Carson v. Fuhs, 131 Pa. 256.

Judgment affirmed.