Overbeck, Appellant, *v.* McHale, Trustee, et al.

Argued April 8, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*William T. Connor*, with him *Hardie Scott* and *John R. K. Scott*, for appellant.

*Thomas E. Comber, Jr.*, with him *Pepper, Bodine, Stokes & Schoch*, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 27, 1946:

This appeal is from a decree dismissing a bill in equity brought by Edna Overbeck to set aside a conveyance of real estate by her husband in his lifetime upon the allegation of fraud on her marital rights.

Bernard Overbeck, plaintiff's husband, and his brother George owned a property on the southeast corner of Broad and Porter Streets, in the City of Philadelphia, as tenants in common. On June 17, 1942, Ber-

nard and George, together with George's wife, Selma, for a stated consideration of $10,000, conveyed these premises to J. H. McHale, a member of the Philadelphia Bar, who, according to the terms of the deed, was to hold title as trustee for Bernard, George, and a third brother, Louis Overbeck. The three brothers were to have "beneficial ownership" of the property as joint tenants with the right of survivorship. At the time this conveyance was made, Bernard Overbeck was engaged to marry the plaintiff and two days later, on June 19, 1942, the marriage was performed. Bernard Overbeck died on May 26, 1944.

It is plaintiff's contention that the antenuptial conveyance in 1942 was in fraud of her marital rights, that it was made without consideration, without her knowledge, and its sole purpose was to defeat whatever interest she might acquire in the property by marriage.

The issues here were primarily factual and after hearing, President Judge FINLETTER found that there was no fraud in the conveyance in question, that there was a good and valuable consideration for the transfer and on these findings concluded that the bill should be dismissed.

Since defendant offered no testimony, the question is whether plaintiff has made out a prima facie case. Her testimony fell far short of sustaining the allegations in her bill. Taken in its entirety, plaintiff's evidence would at best establish merely that the conveyance was accomplished without her knowledge, and that her husband had made representations to her before and after marriage that he was the owner of one-half of the premises.

Assuming her competency as a witness (Cf. *Patton v. Patton*, 351 Pa. 6, 39 A. 2d 921), it is clear that her testimony does not sustain her burden of proof. While it may at one time have been the rule in this jurisdiction that the failure to disclose an antenuptial conveyance of real estate to an intended spouse was prima facie evidence of fraud (see *Duncan's Appeal*, 43 Pa. 67; *Robin-*

*son v. Buck,* 71 Pa. 386), the more modern cases have established that to be in fraud of dower rights something more in the way of proof must be produced. As is said by Mr. Justice LINN in *Kirk v. Kirk et al.,* 340 Pa. 203, 16 A. 2d 47, at pages 207, 208: "Either spouse may challenge, as fraudulent, a conveyance, of real estate or a gift of personal property made during a treaty of marriage, but mere proof of the conveyance or gift, without the knowledge of the other party, does not constitute a prima facie case of fraudulent transfer. In addition, it is necessary for the party alleging it to prove the fraud, or 'actual fraud,' to use an expression common in the decisions. Mere conjecture or suspicion does not take the place of evidence. . . ." See commentary on *Kirk v. Kirk, supra;* Bregy and Wilkinson, Antenuptial Transfers as Frauds on Marital Rights in Pennsylvania, 90 U. of Pa. L. Rev. 62 (1941).

*Cancilla v. Bondy et al.,* 353 Pa. 249, relied upon by appellant, does not modify the above rule. It is distinguishable on its facts from the instant case. There the husband *voluntarily* mortgaged his property. The only reason for the conveyance was to defraud his wife. As was said by Justice STERN in that case, the transfer was "a patently crude attempt to destroy plaintiff's dower rights in the property. . . ." Id. at page 253.

In the instant case the conveyance was made for a consideration of $10,000. While plaintiff in her bill alleged that there was no good or valuable consideration for the transfer, there is nothing in the evidence to support the allegation and the chancellor found that there was good and valuable consideration, as stated in the deed.

Appellant also contends that the trust which was created in the conveyance by Bernard and his brother to McHale as trustee was a dry trust. Be this as it may, settlors do not retain title to the property put into a dry trust. The effect of this is to vest both legal and equiable title in the cestui que trusts. If this was a dry trust,

the three brothers would hold an absolute title as joint tenants with the right of survivorship. See *Marsh v. Platt*, 221 Pa. 431, 70 A. 802, and cases cited in Hunter, Pennsylvania Orphans' Court Commonplace Book, Vol. II, at p. 1268 (on effect of dry trust). Appellant cites *Arnold v. Harper*, 4 Sadler 126, for the proposition that where there is a dry trust, title remains in the *settlor*. An examination of that case reveals that it stands for the rule exactly opposite to that for which appellant contends. There it was held that a testamentary trust was dry and therefore *executed in the donee*. It did not decide that settlor's estate retained the legal title.

The decree is affirmed; costs to be paid by appellant.