Smigell, Appellant, *v.* Brod.

Argued January 11, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

re-argument refused April 11, 1951.

*David S. Malis,* with him *Robert H. Malis* and *Malis, Malis & Malis,* for plaintiffs.

*William N. Nitzberg,* for defendant.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 19, 1951:

The two appeals are from orders in an *ejectment* suit following a jury's verdict for the defendant. One appeal is by *plaintiffs* because of the court's refusal to enter judgment n.o.v. for plaintiffs. The other is by *defendant* from the grant of a new trial.

Plaintiffs seek possession of real estate under a deed through their deceased father. Defendant who is in possession interposes a defense as equitable owner of a *one-third* interest, this being claimed as her intestate share as surviving spouse. The basis for defendant's claim is that her husband, *prior to their engagement to marry,* and without her knowledge, conveyed the premises in question to a trustee for himself for life, with remainder to plaintiffs, children by his first marriage. Defendant maintains that the conveyance constituted a fraud upon her marital rights and, therefore, she retained and never was divested of such equitable interest.

Louis Brod, a widower, aged 63, married defendant, a widow, aged 61, on September 2, 1938. They became engaged on August 14, 1938. *Prior to the engagement* Louis Brod owned 6017 Christian Street, Philadelphia. On July 30, 1938, *two weeks prior to the engagement,* for a named nominal consideration, Louis Brod conveyed the premises to a trustee for himself for life and thereafter to his two daughters in fee. He died April 2, 1948. The trustee, in accordance with the terms of the trust, upon grantor's death, deeded the premises to plaintiffs. While Louis Brod died testate, his residuary estate, including the premises here involved, passed in accordance with the intestate law, viz.: to defendant, as widow, one-third, and to each of the plaintiffs, as children, one-third.

Defendant did not claim that her husband told *her* what real estate he owned. She testified, "I don't remember asking him. All I knew that he owned the

property, that's all." However, two of defendant's children and a grandson testified that Louis Brod solicited their co-operation in securing defendant's consent to marrying him; that he had stated to the children and grandson that he owned the real estate; he had a good job; he would take good care of defendant and "that she will always have a third share in my properties." It was testified that the conversation with the children was in the presence of defendant.

The pivotal question is whether, despite the conveyance, defendant *retained* an equitable interest in this real estate *as surviving spouse*. A widow's share is allotted "in lieu and full satisfaction of her dower at common law": Intestate Act of 1947, April 24, P. L. 80, Sec. 5, 20 PS 1.5. Defendant maintains that the conveyance was a fraud upon her just expectations and conjugal rights which were *about* to be acquired by her. She contends that the conveyance should be declared void and ineffective and the property be held to be a part of her deceased husband's estate of which she possesses a surviving spouse's share.

There are three situations which have been considered by this Court where a spouse or prospective spouse has conveyed real or personal property without joinder or consent of the other: (a) after marriage (b) after engagement but before marriage (c) before engagement to marry.

(a) *After marriage*: It is unnecessary to cite statutes and cases that insofar as *real estate* is concerned, a married *woman* may neither convey nor mortgage real estate without the joinder of the husband. A married *man,* however, may convey *his interest* in realty without the wife's joinder, but in such case the wife's rights and interest therein remain undivested. But either spouse may freely convey his or her *personal property* without joinder, except in cases of actual

fraud: *Cancilla v. Bondy et al.,* 353 Pa. 249, 44 A. 2d 586.

(b) *After engagement but before marriage*: This situation was reviewed by the late Justice Linn with his accustomed scholarly thoroughness in *Kirk v. Kirk et al.,* 340 Pa. 203, 16 A. 2d 47. He stated the law as it had existed in England and in our early cases, but demonstrated that those principles are ". . . *not the law today.* . . ." (emphasis supplied) Thus in the early Philadelphia County case of *Baird v. Stearne et al.,* 15 Phila. 339, a widow during courtship had been made acquainted with her husband's circumstances and at the time of her marriage was ignorant of his secret conveyance. Such conveyance was set aside as a fraud upon her just expectations and conjugal rights about to be acquired by her. He also cited, to the same effect, the early cases of *Duncan's Appeal,* 43 Pa. 67 and *Robinson v. Buck,* 71 Pa. 386. Justice Linn said, p. 205: "The principle applied [under the old rule] was that the fact of conveyance, by one of the parties to a treaty of marriage without the knowledge of the other, was evidence of fraud, sufficient, unless rebutted, to avoid the conveyance. This doctrine was first announced in England where it was applied to transfers by the intended wife which would defeat the husband's absolute right to her personalty and his vested interest in her real estate at common law as an incident of marriage. It is not the law today. . . ."

Also p. 207: "Under modern statutes, a wife still has a contingent interest in her husband's real estate similar to inchoate dower at common law. It was an interest which the English courts considered too remote for antenuptial protection; it cannot be asserted against the husband's creditors and vests only if the wife survives; it is not, in short, such a present and certain interest as, under the English cases, would

ordinarily constitute the consideration for marital obligations. There is no valid reason, therefore, why the rule of presumed fraud should apply to antenuptial conveyances of real estate any more than it can apply to gifts of personalty as to which it has been rejected.

"Either spouse may challenge, as fraudulent, a conveyance of real estate or a gift of personal property made *during a treaty of marriage,* but mere proof of the conveyance or gift, without the knowledge of the other party, does not constitute a prima facie case of fraudulent transfer. In addition, it is necessary for the party alleging it to prove the fraud, or 'actual fraud,' to use an expression common in the decisions. Mere conjecture or suspicion does not take the place of evidence. We can therefore not sustain the decision that proof of the conveyance without plaintiff's knowledge entitled her to a decree." (emphasis supplied)

(c) *Before the engagement*: When the gift is alleged to have been made *before the engagment,* a surviving spouse may not set aside the gift. In order for him or her to prevail he or she must establish that the gift was made *after the marriage contract,* as well as the existence of *actual fraud*: *Patton v. Patton,* 351 Pa. 6, 39 A. 2d 921.

The fundamental principle which enables a surviving spouse to void a transfer of property is based upon his or her status as spouse. Such individual is entitled to his or her intestate share of the *estate* of the deceased spouse. This presupposes that the deceased spouse *possessed,* either at law or in equity, an interest in the real or personal property sought to be acquired. In the instant case it is conceded that the conveyance was made *prior to the engagement*. The defendant, therefore, *at that time* had not acquired the status of wife or intended wife and, therefore, had secured no equit-

able interest in her intended husband's property: *Patton v. Patton*, supra. If Louis Brod's representations induced defendant later to enter into a marriage contract, or marriage, and such representations proved untrue or false, defendant's remedy would not be against *property* in which she possessed no equitable interest, but a suit in damages for fraud or deceit. The record discloses, however, that prior to the present ejectment action defendant *did* institute and prosecute an action for damages against the plaintiffs and their trustee and that upon trial the case was nonsuited. Defendant failed to establish an equitable interest in the premises.

This suit is in ejectment, a possessory *legal* action to recover possession of land. A widow, however, has no right to the *exclusive* possession of her deceased intestate spouse's lands and hence cannot support ejectment for her *interest* therein: *Bratton v. Mitchell*, 7 Watts 113; *Pringle v. Gaw*, 5 Sergeant & Rawle 536; *Gourley v. Kinley*, 66 Pa. 270. See also: *Bridgeford v. Groh et ux.*, 9 D. & C. 5 (LEWIS, J.) and 13 D. & C. 704 (STERN, P. J.); *Hahn's Estate*, 44 D. & C. 535 (GEARHART, P. J.).

Defendant relies upon *Wylie v. Mansley*, 132 Pa. 65, 18 A. 1092. There an *equitable* defense was interposed in the *legal* action of ejectment. In that case defendant claimed title *to the whole of the land under a resulting trust because of payment of the purchase money*. In such a situation the legal action was effectually turned into an equity case, where the trial judge became a chancellor and the jury his advisers. That case has no application to the present situation.

The appeal in No. 271 is sustained. Appeal in No. 254 is dismissed. The order of the court below is reversed and judgment is here entered for the plaintiffs *non obstante veredicto*.