## Giordano v. Prokopchak

*Francis X. Caiazza* and *Carmen F. Lamancusa,* for plaintiff.
*Robert H. Isbell,* for defendant.

SALMON, *J., Specially Presiding,* June 24, 1981 — The litigation between these parties began with an action in replevin for household goods and furniture filed by the Prokopchaks against Giordano on January 17, 1979, at no. 37-1979. On the same date, the same plaintiffs filed an action in ejectment against the same defendant at no. 39-1979. On February 3, 1979, the said Giordano filed an action in ejectment against the said Prokopchaks at no. 125-1979. All of these matters were consolidated for trial before us.

At the outset, Richard Audino, Esq., counsel for the Prokopchaks, agreed that their action at no. 39-1979 had become moot and should be dismissed. We have entered an order accordingly. It was further agreed that the replevin action at no. 37-1979 had also become moot since plaintiffs had taken possession of the chattels in issue. However, there was outstanding in that case a rule upon the Prokopchaks to show cause why they should not be held in contempt. Defendant Giordano in that case contended that matter was still for trial and we proceeded to hear it in consolidation with the ejectment action at no. 125-1979.

Upon completion of the testimony, Mr. Audino, on behalf of the Prokopchaks, moved to dismiss the petition for contempt. Counsel were heard and the court discharged the rule at T. 38 because no violation of any court order was shown. This leaves only the ejectment action at no. 125, 1979, which we now consider.

On or about May 30, 1978, Steve Prokopchak et ux. acquired title to a building lot in Neshannock Township, Lawrence County, known as Lot 304, Section G, in Beechwood Acres Plan which is a recorded plan. About the same time, the parties hereto entered into a written building contract wherein Giordano agreed to build a certain dwelling on the lot for defendants for a sum in excess of $100,000.

The contract, apparently written by plaintiff, contained provision for payment in percentages of the total as the work progressed and for payment of the full amount due upon completion of the work. It also contained the following provisions:

"7. From the time of the commencement of performance of the work under this agreement until its completion, contractor shall be entitled to be and

remain in possession of the property of the owner so far as such possession is required by contractor for the purposes of such performance, but such performance shall not in any way interfere with the right of owner to go upon the premises and inspect the same and the work being done. Except as otherwise provided in Paragraph 9 herein, owner shall not occupy the subject premises until such time as contractor has completed performance under this agreement and owner has made final payment as hereinafter set forth.

• • •

9. In the event all progress payments as per the preceding paragraph have been made by owner and the parties agree upon the work required by contractor for his completion as per the attached plans and specifications and the reasonable cost therefor, then owner may, with the concurrence of contractor, pay contractor the balance due and payable upon contractor's completion as per the previous paragraph less said agreed upon reasonable cost of completion, and thereafter proceed to occupy said premises. Said deducted amount shall be paid by owner to contractor upon contractor's completion of the agreed upon required work for completion under this paragraph."

The house was substantially completed by October 31, 1978. The Prokopchaks obtained permission from Giordano to store certain furniture in the house pending its completion. Later they informed Giordano they wanted to remove their said furniture. By agreement, Giordano's employe and brother, Louis Giordano, went to the premises to unlock the door so that the furniture could be removed. This was pursuant to an agreement between the parties with the participation of their

respective counsel, Francis Caiazza, Esq. for Giordano, and Richard Audino, Esq. for the Prokopchaks. The time for this removal was set at 9:00 a.m. on January 24, 1979. Plaintiff, Joseph Giordano, Jr., was out of town at that time.

At the appointed time, Louis Giordano unlocked the door. Defendants were present with their said counsel. As soon as the door was unlocked, Mr. Audino left the premises. Defendants also had with them at least two other individuals whose presence and manner caused Louis Giordano to fear violence. He phoned Mr. Caiazza who advised him to avoid physical violence. He then phoned the State Police who told him they could not respond as long as no crime had been committed. Louis then left the premises. Defendants had a carpenter present or on the way who immediately changed all the exterior locks on the house so that plaintiff could not enter.

Defendants had no moving van or truck at the premises which could have hauled their furniture. The entire arrangement appears to have been, on the part of defendants, a ruse to oust plaintiff from possession of the premises although payment had not yet been fully made by defendants in accordance with the building contract. Plaintiff then brought this action in ejectment on February 3, 1979.

Plaintiff proved by admissions in the pleadings the existence of the building contract containing the paragraphs seven and nine above recited. It is plaintiff's position that to maintain an action in ejectment he does not need title to the premises but only a right of immediate possession. This is, in general terms, an often stated rule of Pennsylvania law and procedure: 13 Standard Pa. Pract., Ejectment §20.

However, in considering the general rule just recited, it must be observed that plaintiff must show, not only the right to immediate possession, but also the right to *exclusive* immediate possession as against defendant: 12 P.L.E., Delivery §7; Brubaker v. Carlisle Borough, 376 Pa. 330, 102 A. 2d 418 (1954). This rule requiring plaintiff to show an immediate right to exclusive possession as against defendant was also the controlling principle of law in Smigell v. Brod, 366 Pa. 612, 79 A. 2d 411 (1951). See 13 Standard Pa. Pract. Ejectment §30. We have no quarrel with any of the cases cited to us by plaintiff, but examination of the facts in each of them will show that where plaintiff succeeded he had the right to exclusive immediate possession.

The most casual reading of the paragraphs of the building agreement upon which plaintiff relies for his right of possession will show that his possession was not to be exclusive. Defendants, owners of the fee, reserved the right to go upon the property.

Such provisions are not uncommon in building agreements. They must be construed as a matter of contract law by reading the contract and determining the intent of the parties. The purpose of such clauses is obviously to permit the building contractor to complete his work without undue interference by the owner. They do not purport to convey any "interest" in real estate.

Neither party has cited to us any case involving interpretation of such a provision and our own research has discovered none. It seems to us that the building contract, neither in paragraphs seven and nine nor elsewhere, conveys to plaintiff any such interest in land which would support an action in ejectment for its violation. The possessory privilege given to plaintiff may constitute an easement for

the purposes stated or it may constitute a security interest. It might have been enforced by an action in equity. Incidentally, we are aware of Pa.R.C.P. no. 1056(b) but no relief under that rule was requested at any time by plaintiff; moreover, since it is our conclusion that ejectment is not available to plaintiff, this rule is not applicable.

Plaintiff was obviously outraged by the manner in which defendants ousted him from possession. His outrage is justified and the court commented upon it from the bench. However, we are unable to grant plaintiff relief in the action before us. Defendants, as a matter of law, were entitled to have their demurrer granted at the close of plaintiff's testimony.

## ORDER

And now, June 24, 1981, for reasons stated in the foregoing opinion, plaintiff's action in ejectment is dismissed and judgment is here entered for defendants.